**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **TIMOTHY BLY OSBORNE,** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **V.** | * | **Case No. 1:05CV00018 JLH/BD** |
| | * | |
| **RICHARD HAWKINS and** | * | |
| **DAVID FIELDER,** | * | |
| | * | |
| **Defendants** | * | |

## RECOMMENDED DISPOSITION

### I.    Procedures for Filing Objections

The following recommended disposition has been sent to United States Chief

District Judge J. Leon Holmes.  Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or legal

basis for the objection.  If the objection is to a factual finding, specifically identify that

finding and the evidence that supports your objection.  An original and one copy of your

objections must be received in the office of the United States District Court Clerk no later

than eleven (11) days from receipt of the recommendations.  A copy will be furnished to

the opposing party.   Failure to file timely objections may result in a waiver of the right to

appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new,

different, or additional evidence, and to have a hearing for this purpose before the District

Judge, you must, at the same time that you file your written objections, include the

following:

1.     Why the evidence desired to be introduced at the requested
       hearing was not offered to the Magistrate Judge for
       consideration.

2.     The detail of any testimony desired to be introduced at a
       hearing before the District Judge in the form of an offer of
       proof,  and a copy, or the original, of any documentary or
       other non-testimonial evidence desired to be introduced at
       the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an evidentiary

hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and/or request for a hearing to:

        Clerk, United States District Court
        Eastern District of Arkansas
        600 West Capitol Avenue, Suite 402
        Little Rock, AR 72201-3325

## II.     Background

The Plaintiff, an inmate in the custody of the Arkansas Department of Correction

(ADC), filed this action *pro se* under 42 U.S.C. § 1983 alleging that his constitutional

rights were violated by deliberate indifference to his serious medical needs while detained

at the Independence County Detention Facility.[1]  The Court entered an Order (docket

---

[1] Because Plaintiff Osborne was a pretrial detainee in the Independence County
Detention Facility at the time of the alleged violation, his §1983 claim is technically not
analyzed under the Eighth Amendment, but under the Fourteenth Amendment.  *Owens v.
Scott County Jail,* 328 F.3d 1026, 1027 (8th Cir. 2003).  However, there is no practical
difference in the analysis since pretrial detainees are entitled to the same protection under
the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment.
*Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir. 2006).

entry #15) granting the Plaintiff's motion to amend his Complaint in order to state the
relief sought; the Amended Complaint (docket entry # 17) requested that the Court:
1) dismiss all pending state criminal charges; 2) expunge and seal the Plaintiff's criminal
record; 3) award monetary and punitive damages; and 4) correct violations of jail
standards.  The Court entered an Order on December 7, 2005 (docket entry #26) denying
the Plaintiff's motions for release and to halt state criminal proceedings (docket entry #s 8
and 9), which the Court construed as requests for preliminary injunctive relief.

Now pending before the Court are motions for summary judgment filed by
separate Defendants Richard Hawkins and David Fielder, M.D. (docket entry #s 34 and
37).  The Plaintiff filed Responses to both motions (docket entry #s 40 and 41).
Additionally, Defendant Fielder filed a Reply (docket entry #45), to which the Plaintiff
responded (docket entry #48).

### III.   Law and Analysis

Summary judgment is appropriate when the evidence, viewed in the light most
favorable to the nonmoving party, presents no genuine issue of material fact.
Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v.
Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986).  The party opposing summary judgment
may not rest upon the allegations set forth in its pleadings, but must produce significant
probative evidence demonstrating a genuine issue for trial.  See *Anderson,* 477 U.S. at
248-49; see also *Hartnagel v. Norman,* 953 F.2d 394, 395-96 (8th Cir.1992).  "[T]he mere
existence of some alleged factual dispute between the parties will not defeat an otherwise

3

properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247-48 (emphasis omitted).  If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See *Celotex,* 477 U.S. at 322.  "Although it is to be construed liberally, a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

A.    **Capacity**

As an initial matter, the Court notes that the Plaintiff specifically filed his original Complaint against the Defendants in their official capacities only, and his Amended Complaint does not indicate the capacity at all.  "[A]bsent a clear statement that officials are being sued in their personal capacities, 'we interpret the complaint as including only official-capacity claims.'"  *Murphy v. Arkansas*, 127 F.3d 750, 754–55 (8th Cir. 1997) (citation omitted).  However, a *pro se* complaint is to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), and examination of the body of the Amended Complaint shows that the Plaintiff intended to sue the Defendants in both official and individual capacities.

B.    **Defendant Hawkins**

Defendant Hawkins argues in his Motion for Summary Judgment that the suit against him in his official capacity is actually a suit against the county itself, and the Plaintiff cannot show that an alleged constitutional violation occurred as a result of

4

county policy.  Additionally, Defendant Hawkins contends that there is no evidence of his deliberate indifference to the Plaintiff's serious medical needs, or alternatively, that he is entitled to qualified immunity.  The Plaintiff filed a Response stating that Defendant Hawkins "has only been represented to me as an EMT-emergency medical technician" and that a copy of the Independence County Detention Facility (ICDF) rules and standards require a licensed practical nurse to hold the Jail Nurse position.  Therefore, the Plaintiff argues Defendant Hawkins was not qualified to hold the position of ICDF Nurse, and his deliberate indifference to the Plaintiff's serious medical needs resulted from the "hiring of unqualified personnel" by Independence County and thus giving rise to the Independence County's liability.  The Plaintiff's Response also reasserts his contention that Defendant Hawkins disobeyed doctors' orders, and argues that Defendant Hawkins is not entitled to qualified immunity.

Defendant Hawkins served as Jail Nurse for ICDF at the time of the events described in the Plaintiff's Complaint.  In the original Complaint, the Plaintiff states that he noted his history of high blood-pressure during in-processing at the ICDF.  Although his chronology of events is inconsistent, according to the Plaintiff, he was sick one week before Defendant Hawkins checked his blood-pressure on February 18, 2005, and his blood-pressure was not checked from that date until February 25, 2005.  On February 25, Defendant Hawkins checked the Plaintiff's blood-pressure and transported him to separate Defendant Dr. Fielder's office where he received a prescription.  The Plaintiff then states that he did not receive the prescribed medication until February 23 and that his

condition worsened until February 25 when his nose began to bleed.  The Plaintiff

notified a prison guard, who took the Plaintiff's blood-pressure, even though the Plaintiff

alleges the guard was not trained to do so.  In turn, the guard asked another inmate to

check the blood-pressure.  According to the Plaintiff, prison personnel transported him to

a hospital emergency room because the blood-pressure reading was high.

The Plaintiff next mentions Defendant Hawkins in his original Complaint by

stating that Defendant Hawkins and the prison guards failed to follow an emergency room

doctor's order, allegedly given to a guard to pass on to Defendant Hawkins.  The order

directed that the Plaintiff should be seen by Dr. Fielder on February 28, 2005, or March 1,

2005.  The Plaintiff alleges that the guards and Defendant Hawkins "do not follow

[doctors'] orders."  Presumably, the lack of following orders the Plaintiff refers to is

based on the Plaintiff's not being taken for an appointment with Defendant Dr. Fielder

until March 2, 2005.

Last, the Plaintiff's original Complaint alleges that a difference in blood-pressure

readings—one taken by Defendant Hawkins on March 2, 2005, allegedly showing a

reading of 160 over 96, and another taken at Dr. Fielder's office showing a reading of 180

over 108—"is the type of reading Nurse Hawkins gives to keep me and other inmates

with [high blood-pressure] from going to [the doctor]."  The Plaintiff also states that he

was taken to the emergency room on March 1, 2005, and when his medical information

was faxed to the emergency room, medications that had been allegedly discontinued by a

doctor on his previous emergency room visit were still listed.  The Plaintiff alleges that

Defendant Hawkins was responsible for not removing the discontinued prescriptions.

As noted, there are inconsistencies with the  Plaintiff's chronology of events in his

original Complaint.  He first states that his blood-pressure was not taken from February

18, 2005, until February 25, 2005, when Defendant Hawkins checked him and transported

him to see Dr. Fielder.  Then, the Plaintiff claims that he did not receive his medication

until February 23, 2005—two days before actually receiving the prescription according to

him—and was taken by ambulance to the hospital on February 25, 2005, the same day he

stated Defendant Hawkins transported him to Dr. Fielder.  Exhibits 1 and 2 attached to

Dr. Fielder's Motion for Summary Judgment show that he treated the Plaintiff on

February 22, 2005, and March 2, 2005.

The Plaintiff's Amended Complaint changes the chronology and states that the

Plaintiff first saw Dr. Fielder on February 22, 2005, omitting his previous statement in his

Complaint that his blood-pressure was not taken between February 18, 2005, and

February 25, 2005.  "[A]n amended complaint supercedes an original complaint and

renders the original complaint without legal effect."  *In re Atlas Van Lines, Inc.*, 209 F.3d

1064, 1067 (8th Cir. 2007).  Therefore, the Court relies on the Plaintiff's Amended

Complaint for its analysis.

## 1.    Individual Capacity

The Plaintiff alleges that Defendant Hawkins violated his constitutional rights by

deliberate indifference to his serious medical needs.  Deliberate indifference by prison

personnel to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Inmates must demonstrate that they suffered objectively serious medical needs and that prison officials actually knew of, but deliberately disregarded, those needs. *Id*. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir.1996). As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. *Id*.

A serious medical need is one that has either been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. *Coleman,* 114 F.3d at 784. "When an inmate alleges that a delay in medical treatment constituted a constitutional deprivation, the objective seriousness of the deprivation should also be measured by reference to the effect of delay

in treatment." *Id.* (citing *Crowley v. Hedgepeth*, 109 F.3d 500,502 (8th Cir. 1997)). "An inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs." *Id.*

The subjective element of a deprivation of medical care case requires a finding of actual knowledge on the part of the defendant. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Coleman,* 114 F.3d at 784. Liability under the Eighth Amendment may attach if a prison official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to avoid the harm. *Coleman,* 114 F.3d at 784. "Failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge. *Id*. (citing *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)). "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned under the Eighth Amendment." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (citing *Farmer,* 511 U.S. at 838).

In his Amended Complaint the Plaintiff states that Defendant Hawkins transported him to a doctor's office on February 22, 2005, in response to his high blood-pressure and back pain, and that he was taken by ambulance to a hospital emergency room on February 25, 2005, following an episode of high blood-pressure and bleeding from the nose and mouth. Also, the Plaintiff alleges in his Amended Complaint that on March 4, 2005, he

9

showed Defendant Hawkins a naproxen pill and that Hawkins stated that the Plaintiff

should not have been given the pill.  In his original Complaint, the Plaintiff alleges that

Defendant Hawkins was solely responsible for removing discontinued medication from

the list of prescriptions to be dispensed to inmates.

While Exhibit 1 attached to separate Defendant Fielder's Motion for Summary

Judgment (docket entry # 34-2) shows that Defendant Fielder ordered that the naproxen

be discontinued on March 2, 2005, the Plaintiff's Amended Complaint states that

Defendant Hawkins corrected other prison personnel when he became aware that

naproxen was still being dispensed to the Plaintiff.  The Plaintiff fails to show any

evidence that Defendant Hawkins' alleged failure to remove the discontinued naproxen

prescription from the list was done with "deliberate indifference amounting to

callousness."  *Bryan v. Endell*, 141 F.3d 1290, 291 (8th Cir. 1998).  This claim is best

stated as an allegation of negligence on the part of Defendant Hawkins, which is not

enough to establish a constitutional violation.  *Stephens v. Johnson*, 83 F.3d 198, 200–201

(8th Cir. 1996); see also *Estate of Rosenburg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)

(holding that even a showing of gross negligence is not enough to establish deliberate

indifference to serious medical needs under § 1983).

Although the Plaintiff omits the allegations and incident in his Amended

Complaint, he states in his original Complaint that on March 2, 2005, Defendant Hawkins

took his blood-pressure reading before taking him to Defendant Fielder's office.  The

Plaintiff states that there was a disparity between the two readings and alleges that

10

Defendant Hawkins gave low blood-pressure readings "to keep [Plaintiff] and other inmates with [high blood-pressure] from going to the [doctor]."

The Plaintiff's Complaint states that despite an alleged low reading he was still taken to the doctor's office and, therefore, was not denied medical care.  This allegation is best construed as a claim that Defendant Hawkins' routine low blood-pressure readings resulted in delayed medical care.  However, the Plaintiff's Complaint and Amended Complaint both show that the Plaintiff was taken to an emergency room and doctor's office in response to his medical needs.  The Plaintiff failed to provide any verifying medical evidence that shows the detrimental effect of Defendant Hawkins' low blood-pressure readings.  See *Coleman*, *supra*, 114 F.3d at 784.

### 2.    Official Capacity

"Suits against public employees in their official capacity are the legal equivalent of suits against the governmental entity itself."  *Bankhead v. Knickrehm*, 360 F.3d 839, 844 (8th Cir.2004).  Thus, the Court must treat the Plaintiff's official claims as if presented against the county which employed Defendant Hawkins—Independence County—since "[a]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is *not* a suit against the official personally, for the real party in interest is the entity."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal citations omitted) (emphasis in the original).  "A claim against a county is sustainable only where a constitutional violation has been committed pursuant to an official custom, policy, or practice."  *Johnson v. Blaukat*, 453 F.3d 1108, 1114 (8th Cir.2006) (citing *Monell v. Dep't*

*of Soc. Servs.,* 436 U.S. 658, 690-91 (1978)). A plaintiff must show that an official or

employee named in the suit took action based on an unconstitutional policy or custom.

See *Nix. v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989). "A county is liable [under §1983]

if an action or policy itself violated federal law, or if the action or policy was lawful on its

face but led an employee to violate a plaintiff's rights and was taken with deliberate

indifference as to its known or obvious consequences." *Pietrafeso v. Lawrence County*,

452 F.3d 978, 982 (8th Cir. 2006) (quoting *Board of County Comm'rs v. Brown*, 520 U.S.

397, 407 (1997)); see also *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994) (holding

that official-capacity liability must be based on deliberate indifference or tacit

authorization.).

The Eighth Circuit defines policy as "an official policy, a deliberate choice or a

guiding principle or procedure made by an official with authority," and custom as a

"persistent, widespread pattern of unconstitutional conduct of which officials have notice

and subsequently react with deliberate indifference or tacit authorization." *Johnson v.

Outboard Marine Corp.,* 172 F.3d 531, 536 (8th Cir. 1999).

In addition to showing the existence of a custom or policy, a plaintiff must show a

direct causal link, indicating that the policy or custom is "the moving force [behind] the

constitutional violation," *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir. 1999)

(citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978)). "[A] municipality

cannot be held liable solely because it employs a tortfeasor – or in other words, a

municipality cannot be held liable under § 1983 on a *respondeat superior* theory."

*Monell,* 436 U.S. at 691; see also *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 833 (1985) ("[T]he scope of § 1983 liability does not permit such liability to be imposed merely on evidence of the wrongful action of a single city employee not authorized to make city policy.") (Brennan, J., concurring).

Although the Plaintiff has failed to show a constitutional deprivation on the part of Defendant Hawkins, even had he done so, the only evidence the Plaintiff references to show a causal link between the alleged deliberate indifference exhibited by Defendant Hawkins and a custom or policy of Independence County is Exhibit 1 attached to Defendant Hawkins' Response (docket entry #13) to the Plaintiff's motion for release and to halt his state criminal prosecution.  Exhibit 1 concerns ICDF policies on the medical care of prisoners, and in a policy section entitled "Detainee Sick Call" there is a list of definitions.  The "Detention Facility Nurse" is defined as a "licensed nurse having signed an agreement to conduct sick call and perform other services for the Detention Facility, under the supervision of the Detention Facility Doctor."  Immediately following this definition is a section entitled "Procedures."  The staffing procedure states that "[t]he Detention Facility Nurse/paramedic conducts sick call" and that the nurse or paramedic is under the supervision of the facility doctor.

The policy statement indicates that a paramedic is appropriate for ICDF staffing, and there is no evidence that an emergency medical technician or paramedic violates any law or constitutes "the hiring of unqualified personnel" as the Plaintiff asserts.

13

Regardless, there is no § 1983 liability for violating prison policy, even if the Plaintiff could establish that Defendant Hawkins' status as an Emergency Medical Technician or paramedic somehow violated such a policy.  *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997).

While the Plaintiff argues that a case from the Fifth Circuit, *Williams v. Edwards*, 547 F. Supp. 1206 (5th Cir. 1977), shows that "rendering of medical services by unqualified personnel is deliberate indifference," the alleged conditions and medical treatment described at Angola prison in Louisiana went far beyond his allegations here. The record here shows that the Plaintiff was transported to the local emergency room as well as to a private physician on several occasions while at ICDF in response to his medical needs.  There is no showing that a policy or custom of Independence County caused Defendant Hawkins to be deliberately indifferent to Plaintiff's serious medical need, or that Independence County acted with deliberate indifference to the constitutional rights of detainees such as Plaintiff Osborne.  See *City of Canton v. Harris,* 489 U.S. 378, 387-388 (1989); see also *Board of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 405 (1997) ("[R]igorous standards of culpability and causation [for a § 1983 claim] must be applied to ensure that the municipality is not held liable solely for the actions of its employee.").

The Court recommends the Plaintiff's individual capacity claim against Defendant Hawkins be dismissed because there is no evidence of deliberate indifference to the

Plaintiff's serious medical needs.  Additionally, absent a constitutional deprivation, the

Plaintiff's official capacity claim likewise fails.  Even if he had established a triable issue

on the Defendant's deliberate indifference to his serious medical needs, the Plaintiff fails

to show any evidence that the alleged harm was caused by an official policy or custom of

ICDF.  Accordingly, the Court recommends that the Plaintiff's claim against Defendant

Hawkins in his individual and official capacities be dismissed.

### C.      Defendant Fielder

Separate Defendant Fielder argues in his Motion for Summary Judgment: (1)  that

he was not deliberately indifferent to the Plaintiff's serious medical needs and that he did

not proximately cause any injuries to the Plaintiff; (2) that he is entitled to qualified

immunity; and (3) that the Plaintiff failed to exhaust his administrative remedies.

Defendant Fielder states in a sworn affidavit attached to his motion that he is a family

practice physician at the Batesville Family Practice Clinic.  He further states that he has

never been under contract to provide medical care to inmates, and that he is not obligated

to treat inmates at the ICDF.  According to Defendant Fielder, he occasionally treats

inmates at the jail on a fee-for-service basis not resulting from a contract with

Independence County.

The Plaintiff's Complaint and Amended Complaint allege that separate Defendant

Fielder prescribed him medications on February 22, 2005 (February 25 in original

Complaint) which reacted adversely with those prescribed for high blood-pressure.  The

Plaintiff claims that Defendant acknowledged during his March 2, 2005, visit that there was "talk" of a recall because of potential problems conflicting with blood-pressure medications.  The Plaintiff additionally alleges that Defendant Fielder failed to administer a stress test that an emergency room doctor ordered and failed to prescribe any other medications for his high blood-pressure.

In a sworn affidavit, attached to his Reply, Defendant Fielder states that he ordered naproxen for the Plaintiff's back pain in November 29, 2001, and that, although checks of his blood-pressure were "up and down," there was no indication of harm.  The affidavit states that when he treated the Plaintiff in 2005, he again ordered naproxen for pain because he "was aware of Mr. Osborne's history of cocaine abuse," and naproxen is not addictive.  Defendant Fielder's affidavit denies telling the Plaintiff that the naproxen he prescribed reacted adversely with the blood-pressure Monopril and states he is unaware of any scientifically valid evidence that the two medications cannot be prescribed together absent patients with kidney failure.  Additionally, Defendant Fielder points out that the Physician's Desk Reference does not list any contraindication in the use of naproxen with Monopril absent kidney failure (for which he tested the Plaintiff).  Defendant Fielder states that he discontinued the prescription for naproxen when the Plaintiff "expressed suspicion and fear it was causing him to have high blood-pressure readings."  Exhibit B

16

attached to the Plaintiff's Response to Defendant Fielder's motion shows a document entitled "Doctor's Orders to the Jailer" in which Defendant Fielder discontinues naproxen.

The Plaintiff fails to show any evidence that Defendant Fielder was deliberately indifferent to his medical needs.  Exhibit 1 attached to Defendant Fielder's motion (docket entry #34-2) shows that Defendant Fielder prescribed medication for the Defendant's blood-pressure and back pain, Monopril and naproxen respectively, on February 22, 2005, and scheduled a return appointment for the Plaintiff for two weeks later.  Exhibit 2 shows an order to stop the naproxen, based solely on the Plaintiff's concerns, to increase his Monopril dosage, to begin Darvocet for pain, to conduct daily blood-pressure checks, and to schedule another follow-up appointment.  Finally, Exhibit 2 shows that when Defendant Fielder was informed that the Plaintiff refused to keep an appointment with him, he wrote a letter expressing concern to Lt. Rhonda Faircloth, Administrator of the ICDF requesting that the facility "please make arrangements for [Plaintiff] to see another physician in the very near future for medical management" if he continued to refuse treatment with Defendant Fielder.

The Plaintiff's claim that Defendant Fielder exercised deliberate indifference for not administering a stress test to determine if there was any "blockage" is an argument for a specific course of treatment.  Disagreement as to the proper course of treatment is not actionable under the Eighth Amendment.  *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995); *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995); *Smith v.*

*Marcantonio*, 901 F.2d 500, 502 (8th Cir. 1990).   Further, the Plaintiff provides no verifying medical evidence that Defendant Fielder's failure to order a stress test resulted in a detrimental delay in medical treatment.  See *Coleman*, *supra*, 114 F.3d at 784.[2]

The Plaintiff has offered no medical evidence to contradict Defendant Fielder's sworn statements.  "[T]o establish a constitutional violation, an inmate must show more than just inadequate treatment that amounts to a claim of medical malpractice under state tort law."  *Bryan*, *supra*, 141 F.3d at 1291.  See also *Dulaney v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (holding that mere negligence or medical malpractice are insufficient to rise to a constitutional violation).

## 1.     Official Capacity

Even if the Plaintiff could establish that Defendant Fielder was deliberately indifferent to his serious medical needs, there is nothing in the record to suggest any connection between Defendant Fielder's orders and any policy or custom of the ICDF. The Plaintiff is required to show a direct, causal link between some official policy or custom of Independence County as "moving force" behind the alleged constitutional violation and a county cannot be held liable under § 1983 on a *respondeat superior* theory.  *Mettler*, 165 F.3d at 1204; and *Monell*, 436 U.S. at 691.

---

[2]The Plaintiff states in his Amended Complaint that he received a dye test for blockage on March 7, 2005, and that the results were negative.

18

**IV.     Conclusion**

The Plaintiff fails to show any evidence that Separate Defendants Hawkins and

Fielder violated his constitutional rights through deliberate indifference to his serious

medical needs.  Further, the Plaintiff fails to present any evidence that an official policy

or custom of the Independence County Detention Facility or Independence County caused

a constitutional violation.  Accordingly, the Court recommends that the motions for

summary judgment filed by Defendants Hawkins and Fielder (docket entries # 37 and

#34) be granted, and that the Plaintiff's Complaint be dismissed with prejudice.

DATED this 4th day of May, 2007.

_____

UNITED STATES MAGISTRATE JUDGE